Craig J. Ackermann, Esq. (SBN 229832)
cja@ackermanntilajef.com
Avi Kreitenberg, Esq. (SBN 266571)
ak@ackermanntilajef.com
**ACKERMANN & TILAJEF, P.C.**
315 South Beverly Drive, Suite 504
Beverly Hills, California 90212
Telephone: (310) 277-0614

*Attorneys for Plaintiff*
*[Additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DEAUNDRA TILLERY (FKA DEAUNDRA NELSON), an individual,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC, a limited liability company,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Deaundra Tillery, formerly known as Deaundra Nelson, (“**Tillery**” or "**Plaintiff**”) brings this Complaint against Defendant, Google LLC (“**Defendant**” or “**Google**”) and in support thereof states:

## INTRODUCTION

1. This is an action for retaliation and discrimination under the FMLA, Equal Pay Act, and FEHA. After Plaintiff suffered a miscarriage and requested protected leave, Defendant began issuing negative evaluations, placed her on a PIP, denied her compensation awarded to male peers, and ultimately terminated her shortly after she sought accommodations.

## PARTIES

2. Tillery is a resident of Cobb County, Georgia. At all times material, Defendant was Plaintiff’s employer. As a condition of her employment offer, Plaintiff was required to execute an agreement subjecting her to California law and Santa Clara courts.

3. Google is a global technology company specializing in internet-related services and products. Google's principal place of business and headquarters is located in Mountain View, California 94043.

## JURISDICTION, VENUE, DIVISIONAL ASSIGNMENT

4. This Court has personal jurisdiction over Google because it is headquartered in this District and subject to general personal jurisdiction in California.

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under the Equal Pay Act of 1963 (“EPA”) (29 U.S.C. § 206(d)), and the Family Medical Leave Act of 1993 (“FMLA”) (29 U.S.C. § 2615).

6. This Court has supplemental jurisdiction over Plaintiff's claims under the California Fair Employment and Housing Act ("FEHA") because these claims arise out of the same facts and circumstances as Plaintiff's federal claims. 28 U.S.C. § 1367.

7. Venue is appropriate in this Court because Google resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District,

including decisions regarding Plaintiff's performance management, leave administration, compensation, and termination, which were made and implemented from Google's headquarters in Santa Clara County.

8. This action is properly assigned to the San Jose Division, pursuant to N.D. Cal. Civil Local Rule 3-2(c), (e), and the Court's Assignment Plan because this action arises in Santa Clara County.

## CONDITIONS PRECEDENT

9. Tillery filed charges with the EEOC regarding Defendant's discriminatory conduct on or about January 24, 2025.

10. Tillery filed charges with the California Civil Rights Department regarding Defendant's discriminatory conduct on or about October 14, 2025.

11. The EEOC issued a Notice-of-Right-to-Sue letter, attached hereto as **Exhibit "A"** on July 1, 2025.

12. The State of California Civil Rights department issued a Notice-of-Right-to-Sue letter, attached hereto as **Exhibit "B"** on October 14, 2025.

13. Plaintiff has exhausted administrative remedies to bring her timely FEHA claims.

## FACTUAL ALLEGATIONS

14. Defendant hired Tillery as a Cloud Program Manager on January 18, 2022.

15. During her tenure, Tillery repeatedly received positive feedback, bonuses, and recognition for her performance.

16. In late July 2023, Tillery took approved vacation days for her wedding. Within ten days of returning in early August 2023, she received her first formal negative feedback, issued by team lead Sarah Shafey ("**Shafey**"), Program Manager based in LA, California, and transmitted to her manager Danielle Fisla ("**Fisla**").

17. Prior evaluations did not reflect the issues contained in this write-up. Prior to this write-up, Tillery had no documented issues while employed by Defendant.

18. Shafey made a comment during a team meeting that she "need[ed] one of those,"

referring to Tillery's husband. Shafey was a lead on Tillery's assigned project. Tillery was removed from the project within approximately two weeks of the negative report.

19. In August 2023, Tillery asked Shafey why she was removed from the project. Tillery was given positive feedback from Shafey about her performance and Shafey stated that Tillery was not removed from the project due to any fault of Tillery.

20. In October 2023, Tillery was assigned three client accounts (representing 45 billable hours/week) and extra internal duties, which exceeded her written role expectations.

21. Tillery flagged that the overload was excessive. As a result, she was removed from a project and replaced by two people. One of the individuals who replaced Tillery on that project, Joey Onwughalu, expressed to Tillery that the role was overwhelming and that he continued to face challenges despite having a second person assisting with the same duties Tillery had been solely assigned. The other, Krishnan Subramanian, was based in San Francisco, CA.

22. On October 31, 2023, Tillery suffered a miscarriage. She informed Google in writing on November 1, 2023. She also informed Google that she intended to try to get pregnant again and would need time off post-birth for bonding time with the baby. Around this same time (on or around November 1, 2023), Tillery contacted Sedgwick (Google's administrator for leaves of absence) about the miscarriage and the need for leave.

23. Sedgwick started Tillery on FMLA almost immediately. She realized that Google policy required her to take the bereavement leave prior to FMLA leave, so she paused the FMLA leave and scheduled the bereavement to start on or around December 15, 2023.

24. Tillery also told Google she might require additional leave in connection with her miscarriage after the bereavement.

25. Tillery verbally notified Fisla of the miscarriage in early November and that she planned to take some leave. Fisla instructed Tillery to ensure her work was covered and that project leads approved her leave.

26. Ashish Sharma subsequently approached Tillery in mid-November 2023 asking if she was okay after the miscarriage. Plaintiff had not disclosed her miscarriage to Sharma and

Sharma was not on Plaintiff's team and was not in human resources or Plaintiff's management chain. Any disclosure to Sharma (and others) was without Tillery's consent, violated her privacy and caused her distress. Plaintiff later learned her manager/HR disclosed it to Sharma without her consent.

27. After her miscarriage Tillery began experiencing severe symptoms that were later diagnosed as attention deficit disorder ("ADD"). Her ADD caused her difficulty with focus and concentration over multiple projects, impulsivity, and task organization. These affected task completion, meeting deadlines, errors, and prioritizing tasks.

28. On December 7, 2023, Tillery was given a 'below expectations' feedback report by Fisla.

29. Tillery started bereavement leave in connection with her miscarriage on approximately December 15, 2023. During that leave, Tillery was removed from projects and asked to conduct a knowledge transfer to other employees, which caused her additional distress and prevented her from properly grieving.

30. Around this time, Eric Johnson, Cloud Program Manager, received an award and monetary bonus in connection with a project upon which Tillery did the bulk of the work. Tillery received nothing. Johnson himself expressed the sentiment that she had been slighted, stating that he believed Tillery should have received a similar bonus.

31. This was not the only difference in Tillery and Johnson's compensation structure. Around this time, Tillery learned of differences in Johnson and Tillery's compensation structure: Johnson's stock vesting cycle was more frequent than Tillery's.

32. Tillery returned from bereavement on or around January 8, 2024.

33. She was asked to complete another knowledge transfer and started being excluded from meetings and key discussions.

34. In mid-February 2024, Tillery received another negative performance feedback by Fisla that referenced the Shafey negative feedback from August 2023 and excluded positive feedback Shafey subsequently provided regarding the same project.

35. Tillery brought this to Fisla's attention. Fisla stated that the decision about Tillery's performance had already been made.

36. Fisla acknowledged that she had also received a low evaluation at the same time (Tillery later learned this was for failing to provide timely constructive feedback to employees and for lack of project involvement).

37. Tillery submitted a complaint to human resources. She requested that Shafey's August 2023 positive review also be included in her file. Tillery also indicated she was concerned about being retaliated against for making this request.

38. On February 20, 2024, Tillery requested to start the process for taking additional leave connected with her miscarriage. That same day, she had a call with Fisla and a Google human resources representative Deborah Ludwig ("**HR Ludwig**").

39. Fisla and HR Ludwig gave Tillery two options: separate from the company or go on a Performance Improvement Plan ("**PIP**").

40. There was no new client feedback supporting a PIP and Tillery disputed the accuracy of Fisla's evaluation of her performance, both to Fisla and HR Ludwig.

41. Fisla dropped off the call and HR Ludwig was blunt: Although Tillery was making "good points . . . if it wasn't documented then it didn't happen."

42. Tillery asked to see the proposed severance agreement. HR Ludwig refused to provide it, saying it was "not negotiable" and that Tillery could only see the actual document *after* confirming she would agree to take the severance.

43. Tillery sought to continue employment.

44. She followed up with Fisla and HR Ludwig on February 21, 2024, again contesting the "warning" that she had received.

45. Around February 27, 2024, Tillery again spoke with Fisla about Tillery's supposed performance issues. Fisla began attempting to dissuade Tillery from pursuing issues related to the dispute, going as far to say that it wouldn't "benefit" Tillery to sue Google because "lawsuits take too much time and don't pay enough."

46. Fisla then stated that if Tillery planned to sue, Tillery should skip an upcoming NYC conference and spend her "time and money finding a lawyer."

47. During the same conversation, Fisla justified not communicating the alleged performance issues until February 2024 by saying she had the "right to make decisions and have conversations about [Tillery] without [Tillery's] input or knowledge."

48. Tillery attended the NYC conference. While there, on February 28, 2024, Tillery spoke to Director Tony Brown ("**Dir. Brown**") about being presented with a choice between PIP or severance.

49. Dir. Brown's response was direct: He was above Fisla. Fisla was above Tillery. That's just how it was. He then rhetorically asked Tillery, "Do you really want to stay and fight with these people? That is a decision you'll have to make."

50. Tillery was running out of options.

51. In early March 2024, she requested clarity on her PIP status and what she needed to do to comply with it. Tillery was told paperwork would be sent to her. It never came.

52. Tillery started Short-Term Disability ("**STD**") leave on March 3, 2024, through April 29, 2024, and FMLA extensions began. Again, this leave was initially sought in November 2023, but Tillery had been told that it was Defendant's policy to take bereavement first.

53. During the FMLA extension, Tillery lost health insurance.

54. In April 2024, while still on leave, Tillery's manager posted a job listing for her position, evidencing Defendant's intent to replace her while she remained on protected leave.

55. On approximately June 6, 2024, Tillery returned from leave.

56. Fisla told Tillery that a human resources representative wanted to discuss details regarding Tillery's PIP and that she would "see an invite on Monday, June 10, 2024" for that meeting. No invite came.

57. Around this time, Tillery sought disability accommodations. She never heard anything from Google about this request.

58. In mid-July 2024, Tillery reached out to Sedgwick herself and the disability

accommodations process was formally started.

59. On approximately July 15, 2024, Tillery informed Defendant's human resources representative and Fisla about her requested accommodations. She asked both when they needed the paperwork regarding the accommodations and informed them that she had a doctor's appointment on August 1, 2024.

60. On July 22, 2024, Defendant set Tillery's termination meeting. Defendant terminated Tillery on July 29, 2024. HR Director Florendo and HR Ludwig (who are both based on California) and other Google decisionmakers approved her termination.

**FIRST CAUSE OF ACTION**

**VIOLATION OF FMLA (RETALIATION)**

61. Tillery hereby incorporates paragraphs 1-60 as though fully set forth herein.

62. At all relevant times, Defendant was an employer within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

63. Plaintiff was an eligible employee under the FMLA, having worked more than 1,250 hours during the twelve-month period preceding her leave.

64. Plaintiff suffered a miscarriage on October 31, 2023, and on or about November 1, 2023, notified Defendant of her medical condition and need for protected leave.

65. Plaintiff also contacted Sedgwick, Defendant's leave administrator, and initiated the FMLA process for leave related to her miscarriage and related medical condition.

66. Plaintiff engaged in protected activity under the FMLA by requesting and taking FMLA-protected leave and by notifying Defendant of her need for such leave, including anticipated extensions of leave related to her medical condition.

67. Shortly after Plaintiff notified Defendant of her miscarriage and need for leave, Defendant began subjecting Plaintiff to materially adverse employment actions, including but not limited to:

a. Issuing negative performance evaluations inconsistent with her prior performance history;

b. Removing her from projects and reassigning her work;

c. Presenting her with an ultimatum of separation or placement on a Performance Improvement Plan ("PIP") on or about February 20, 2024, the same day she sought additional leave;

d. Posting her position while she remained on protected leave; and

e. Terminating her employment on July 29, 2024.

68. Defendant's adverse actions were causally connected to Plaintiff's exercise of her FMLA rights, as evidenced by the close temporal proximity between her protected activity and the adverse actions, the escalation of discipline following her leave requests, and statements made by management discouraging her from challenging the decisions.

69. Defendant used Plaintiff's need for leave as a negative factor in its performance evaluations, disciplinary measures, and termination decision.

70. Defendant's violations of the FMLA were willful and not in good faith.

71. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered lost wages, lost benefits, and other compensation, in an amount to be proven at trial.

72. Pursuant to 29 U.S.C. § 2617, Plaintiff is entitled to recover back pay, front pay or reinstatement, lost benefits, interest, liquidated damages, attorneys' fees, and costs.

**SECOND CAUSE OF ACTION**

**VIOLATION OF FMLA (INTERFERENCE)**

73. Tillery hereby incorporates paragraphs 1-60 as though fully set forth herein.

74. Plaintiff was entitled to take up to twelve weeks of protected leave under the FMLA for her serious health condition related to her miscarriage.

75. Plaintiff provided Defendant with adequate and timely notice of her need for FMLA-protected leave beginning in November 2023 and for extensions of leave thereafter.

76. Defendant interfered with, restrained, and denied Plaintiff's exercise of FMLA rights by, among other things:

a. Discouraging her from taking leave and conditioning leave on project coverage

approval;

b. Removing her from projects and diminishing her responsibilities because of her need for leave;

c. Failing to maintain her health insurance coverage during approved leave;

d. Counting her need for leave as a negative factor in performance evaluations and disciplinary actions; and

e. Failing to restore her to the same or an equivalent position upon her return from leave.

77. Defendant's conduct had the effect of chilling and burdening Plaintiff's exercise of her FMLA rights.

78. As a direct and proximate result of Defendant's interference, Plaintiff suffered lost wages, lost benefits, including loss of health insurance coverage, and other compensation in an amount to be proven at trial.

79. Defendant's violations were willful and not in good faith, entitling Plaintiff to liquidated damages under 29 U.S.C. § 2617.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE EQUAL PAY ACT (29 U.S.C. § 206(d))**

80. Tillery hereby incorporates paragraphs 1-60 as though fully set forth herein.

81. Defendant is an employer within the meaning of the Equal Pay Act.

82. During her employment, Plaintiff held the position of Cloud Program Manager.

83. Plaintiff and male Cloud Program Managers, including but not limited to Eric Johnson, performed substantially equal work requiring equal skill, effort, and responsibility, and were subject to similar working conditions.

84. Plaintiff and her male comparators were at the same job level, within the same job family, reported through the same management chain, and performed substantially similar client-facing program management duties.

85. Defendant paid Plaintiff less than similarly situated male employees for

substantially equal work. The disparity included, but was not limited to:

a. Differences in base compensation and/or total compensation;

b. More favorable equity awards and/or more frequent stock vesting schedules provided to male comparators; and

c. Monetary bonuses and awards paid to male employees for work substantially performed by Plaintiff, for which Plaintiff did not receive comparable compensation.

86. Any pay differential between Plaintiff and male employees was not based on a seniority system, a merit system, a system measuring earnings by quantity or quality of production, or any factor other than sex.

87. Defendant's violation of the Equal Pay Act was willful.

88. As a direct and proximate result of Defendant's unlawful compensation practices, Plaintiff has suffered lost wages and compensation in an amount to be determined at trial.

89. Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover unpaid wages, liquidated damages, attorneys' fees, and costs.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF FEHA – PREGNANCY DISCRIMINATION (Cal. Gov. Code §§ 12940(a), 12945)**

90. Tillery hereby incorporates paragraphs 1-60 as though fully set forth herein.

91. Plaintiff suffered from a pregnancy-related medical condition when she experienced a miscarriage on October 31, 2023.

92. Plaintiff informed Defendant of her miscarriage and need for pregnancy-related medical leave beginning on or about November 1, 2023.

93. Plaintiff was entitled to pregnancy disability leave and related protections under California law.

94. Following her disclosure of her pregnancy-related condition and request for leave, Defendant subjected Plaintiff to adverse employment actions, including negative performance

evaluations, removal from projects, placement on a PIP, denial of bonuses or awards, and ultimately termination.

95. The timing and circumstances of these actions give rise to a reasonable inference that Plaintiff's pregnancy and related medical condition were substantial motivating reasons for Defendant's conduct.

96. Defendant's conduct constituted unlawful discrimination and interference with rights related to pregnancy disability leave in violation of FEHA.

97. The discriminatory acts were carried out, authorized, or ratified by managing agents of Defendant who are based in California.

98. As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost income and benefits, emotional distress, and other damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF FEHA – GENDER DISCRIMINATION, AND RETALIATION (Cal. Gov. Code § 12940)**

99. Tillery hereby incorporates paragraphs 1-60 as though fully set forth herein.

100. At all relevant times, Defendant was an employer within the meaning of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 et seq.

101. Plaintiff is a woman and therefore a member of a protected class under FEHA.

102. Plaintiff was qualified for her position as a Cloud Program Manager and performed her job competently, as evidenced by her prior positive performance feedback, bonuses, and recognition before the adverse actions described herein.

103. During her employment, Plaintiff and similarly situated male Cloud Program Managers, including but not limited to Eric Johnson, performed substantially similar client-facing program management duties at the same job level and within the same reporting structure.

104. Despite performing substantially similar work, Plaintiff was treated less favorably than similarly situated male employees, including but not limited to:

a. Being denied monetary bonuses and recognition for work she substantially

performed, while male counterparts received such compensation;

b. Being assigned disproportionately burdensome workloads without equivalent support;

c. Being removed from projects and accounts under circumstances where male counterparts were not similarly removed; and

d. Being subjected to escalating discipline and a PIP ultimatum not imposed on similarly situated male employees under comparable circumstances.

105. For example, male Cloud Program Manager Eric Johnson received a monetary award and bonus in connection with a project for which Plaintiff performed the bulk of the work, while Plaintiff received no comparable compensation.

106. Plaintiff was also subjected to materially adverse employment actions, including negative performance evaluations, removal from projects, placement on a PIP, denial of compensation opportunities, and ultimately termination.

107. This conduct was directed from and occurred with the full knowledge of Defendant's California-based human resources professionals.

108. The more favorable treatment afforded to similarly situated male employees, together with the adverse actions taken against Plaintiff, give rise to a reasonable inference of discriminatory intent based on gender.

109. Plaintiff's gender was a substantial motivating reason for Defendant's decisions to treat her less favorably and to terminate her employment.

110. Defendant's conduct constitutes unlawful discrimination on the basis of sex in violation of Cal. Gov. Code § 12940(a).

111. The discriminatory acts were carried out, authorized, and/or ratified by officers, directors, or managing agents of Defendant.

112. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, lost benefits, damage to her professional reputation, emotional distress, humiliation, and other compensatory damages in an amount to be proven at

trial.

113. Defendant's conduct was malicious, oppressive, and/or carried out with reckless disregard for Plaintiff's rights, entitling Plaintiff to punitive damages under Cal. Civ. Code § 3294.

114. Plaintiff is entitled to recover compensatory damages, punitive damages, attorneys' fees, costs, and all other relief deemed appropriate by the Court.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF FEHA – DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, FAILURE TO ENGAGE IN INTERACTIVE PROCESS, AND RETALIATION (Cal. Gov. Code § 12940)**

115. Tillery hereby incorporates paragraphs 1-60 as though fully set forth herein.

116. Following her miscarriage, Plaintiff experienced symptoms that were later diagnosed as Attention Deficit Disorder ("ADD"), a mental impairment that limited one or more major life activities, including concentration, focus, and task organization.

117. Plaintiff was a qualified individual capable of performing the essential functions of her position with or without reasonable accommodation.

118. Plaintiff notified Defendant of her condition and, on or about July 15, 2024, requested reasonable accommodations.

119. Plaintiff also initiated the formal accommodations process through Sedgwick and informed Defendant that medical documentation would be provided.

120. Defendant failed to engage in a timely, good-faith interactive process to determine effective reasonable accommodations.

121. Defendant failed to provide reasonable accommodations to Plaintiff.

122. On or about July 22, 2024, shortly after Plaintiff renewed her accommodation request, Defendant scheduled her termination meeting.

123. Defendant terminated Plaintiff's employment on July 29, 2024, before completing the interactive process or considering reasonable accommodations.

124. Plaintiff's disability and/or request for reasonable accommodation were

substantial motivating reasons for Defendant's decision to terminate her employment.

125. Defendant's conduct constituted unlawful disability discrimination, failure to accommodate, failure to engage in the interactive process, and retaliation under FEHA.

126. The discriminatory and retaliatory acts were carried out, authorized, or ratified by managing agents of Defendant based in California.

127. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other damages in an amount to be determined at trial.

128. Plaintiff is entitled to all remedies available under FEHA, including compensatory damages, punitive damages, attorneys' fees, and costs.

**PRAYER FOR RELIEF**

129. Tillery respectfully requests that the Court enter judgment in her favor and award:

a. Monetary damages to the fullest extent permitted by the FMLA (including backpay, front pay, and liquidated damages);

b. Monetary damages to the fullest extent permitted by the EPA (including back pay, front pay, and liquidated damages) in an amount to eradicate the effects of Defendant's unlawful employment practices of disparate pay based on Tillery's gender;

c. All statutorily available damages pursuant to the FEHA to the fullest extent permitted by law (including backpay, front pay, compensatory, and punitive damages);

d. Pre-judgment and post-judgment interest;

e. Reasonable attorneys' fees and costs; and

f. All other monies and relief deemed just and proper.

/ / /

/ / /

## DEMAND FOR JURY TRIAL

Tillery demands a trial by jury on all issues so triable as of right.

Respectfully submitted,

Dated: April 14, 2026 By: /s/ Craig J .Ackermann

Craig J. Ackermann, Esq. (CA SBN 229832)
Avi Kreitenberg, Esq. (CA SBN 266571)
ACKERMANN & TILAJEF, P.C.
315 South Beverly Drive, Suite 504
Beverly Hills, California 90212
Telephone: (310) 277-0614
Email: cja@ackermanntilajef.com
ak@ackermanntilajef.com

*Attorneys for Plaintiff*